UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 4:23-CR-00210-1-SRC |
| vs. ) | Case No: 4:23-CR-00465-1-SRC |
| ) | |
| GINO RIVES, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

COMES NOW Defendant Gino Rives ("Rives"), through undersigned counsel, and hereby files the following memorandum for sentencing:

**I.   Background**

On October 30, 2023, Defendant Gino Rives pled guilty to a two-count Indictment under Case No: 4:23-CR-00210-1-SRC. Count 1 charged Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 1029(c)(1)(A)(i). Count 2 charged Fraudulently Effecting Transactions, in violation of 18 U.S.C. § 1029(a)(5) and 18 U.S.C. § 1029(c)(1)(A)(ii). On January 18, 2024, the defendant pled guilty to five counts of a twelve-count Indictment under Case No: 4:23-CR-00465-1-SRC. Counts 8-12 each charged Theft of Government Funds, in violation of 18 U.S.C. § 641. *See* Presentence Report ("PSR") at ¶ 1.

Pursuant to the written plea agreement and Rule 11(c)(1)(A), in exchange for the defendant's voluntary plea of guilty to Counts 1 and 2 of the Indictment in Case No: 4:23-CR-00210-1-SRC and Counts 8-12 of the Indictment in Case No: 4:23-CR-00465-1-SRC, the government agreed that no further federal prosecution would be brought in the Eastern District of Missouri in these cases. *Id.* at ¶ 2. The parties also agreed that the sentencing should be consolidated between the two cases: 4:23-CR-00210-1-SRC and 4:23-CR-00465-1-SRC.

The parties agree that the sentencing guidelines to determine the offense levels are found under USSG §2B1.1(a)(2) and USSG §2C1.1(a)(2), and result in a Base Offense Level of 6 for each case. *Id.* at ¶ 3. The Counts are then grouped for guideline calculation purposes because the offense level is determined largely on the basis of total amount of harm or loss. *Id.* at ¶ 49. The parties agreed that fourteen (14) levels should be added pursuant to USSG §2B1.1(b)(1)(H) because the aggregate loss amount was greater than $550,000 but less than $1,500,000. *Id.* at ¶ 51. The parties further agreed that two (2) levels should be added pursuant to USSG §2B1.1(b)(2)(A)(i) because the offense involved financial hardship to one or more victims. *Id.* at ¶¶ 4, 52. The parties agreed that two (2) levels should be added pursuant to USSG §2B1.1(b)(11)(B)(i) because the offense involved the production of an unauthorized access device. *Id.* at ¶¶ 4, 53. Two (2) more levels were added pursuant to USSG §3A1.1(b)(1) because the defendant knew or should have known the victim of the offense was a vulnerable victim. *Id.* at ¶¶ 5, 54. Finally, four (4) more levels were added pursuant to USSG §3B1.1(a) because the defendant was an organizer or leader of a criminal activity that involved five or more participants. *Id.* at ¶¶ 5, 55. The Government agreed to recommend a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and to recommend an additional one-level reduction for acceptance of responsibility by timely notifying authorities of the intention to enter a plea of guilty pursuant to USSG § 3E1.1(b). *Id.* at ¶¶ 59, 60. The parties estimated the Total Offense Level is 27. *Id.* at ¶¶ 9, 61. The calculations in the PSR are consistent with the parties' calculations. For the reasons detailed in this memorandum, Defendant Rives respectfully suggests that a sentence of 36 months imprisonment will best serve the statutory purposes of sentencing.

## II.     Sentencing Rules

Title 18 U.S.C. § 3553(a) requires this Court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. There are four purposes of sentencing[1] and six factors to consider in connection with them.[2] The guidelines are only one factor to consider and deserve no greater weight than any other factor. *See Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Thus, this Court may not presume a sentence within the guideline range as reasonable. *See Rita v. United States*, 551 U.S. 338, 351 (2007). Nor may it presume a sentence outside the guideline range unreasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Furthermore, this Court may not require "extraordinary circumstances" to justify a sentence below the guidelines nor "use a rigid mathematical formula to determin[e] the strength of the justification required for a specific sentence." *Id.* at 47. These rules apply regardless of whether the guideline derives from the Unites States Sentencing Commission ('the Commission") or a policy determination of Congress. *See Kimbrough*, 552 U.S. at 109-10.

The purposes of sentencing are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate

---

[1] The purposes of sentencing are:
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
18 U.S.C. §3553(a)(2)(A)-(D).

[2] The factors to consider in connection with the purposes of sentencing are:
   (A) the nature and circumstances of the offense and the history and characteristics of the defendant;
   (B) the kinds of sentences available;
   (C) the guidelines promulgated by the Sentencing Commission;
   (D) any pertinent policy statement issued by the Sentencing Commission;
   (E) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and
   (F) the need to provide restitution to any victims of the offense.
18 U.S.C. §3553(a)(1)-(7).

deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2)(A)-(D).

The other 18 U.S.C. § 3553(a) factors for consideration in connection with the purposes of sentencing are: (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the kinds of sentences available; (C) the guidelines promulgated by the Sentencing Commission; (E) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (F) the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(1)-(7).

### III.     Analysis of 18 U.S.C. §3553(a)(2) Factors

Here, the requested sentence would meet the statutory purposes of sentencing for several reasons, which also implicate other 18 U.S.C. §3553(a) factors and are discussed in depth below. First, Defendant's history and characteristics, and the fact that his girlfriend had the couple's third child two months ago impact just punishment and the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, as his extended incarceration will substantially impact his wife and children and delay his re-integration into participating in these healthy relationships on a daily basis. (*See* Sections VI and VII below). Moreover, despite growing up in an abusive environment, he has a solid relationship with his girlfriend of almost twenty years, who is supportive of him after the instant offense, and he is an involved father to his three children, considerations that also impact the same factors. Sentencing Commission data suggests that Defendant Rives poses a reduced risk of recidivism, as compared with other offenders, and suggest that a sentence variance is appropriate in this case, impacting the need to protect the

4

public from further crimes of the defendant. He has a criminal history of Category I and has never served prison time before which suggests that an extended sentence of incarceration is not necessary to reflect the seriousness of the offense, to promote respect for the law, or to provide just punishment for the offense (*see* Section VIII below). Finally, Defendant's medical history, in which he had a mesh insert implanted shortly after he was born that has caused damage to his kidneys where he has flare-ups every three to four months impacts the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Defendant Rives was originally prescribed Percocet for his kidney pain around fifteen years old but his usage of the drug increased, and he was purchasing the drug on the street to keep up with his daily usage. These considerations impact his need to receive medical care and substance abuse treatment during any period of incarceration in the most effective manner, which could be effectively delivered within the time frame requested. (*See* Sections IV and VII below).

    **IV.**    **Rives' History and Characteristics**

Defendant Gino Rives was born in October 1987, in Houston, Texas. The defendant's father, Thomas Ely, age 61, resides in St. Louis and is unemployed due to a Stage 3 colon cancer diagnosis. The defendant's mother, Zella Rives, age 58, resides in St. Louis and is unemployed. She is also a co-defendant in Case No: 4:23-CR-00465-1-SRC. His parents never married and maintained an "on and off" relationship throughout his childhood due to his father's ongoing substance abuse issues. Rives has three siblings: Sonia Rives, Debbie Rives, and Rocky Rives, who all reside in St. Louis and with whom the defendant shares good relationships. The defendant reported a challenging childhood, as his father had alcohol and drug addictions as well as a gambling addiction. He was raised by both parents, although he spent several years with his

5

paternal grandparents when his father's addictions were especially bad. The utilities were regularly cut off in his home while growing up and he was physically abused by his father. His father would often call him stupid because of his learning disability, beat him and his siblings and lock them in closets. He witnessed domestic violence regularly between his mother and father. He once saw his father knock his mother's teeth out. The police were often called during these fights and his mother would file restraining orders. Eventually his mother always took his father back and the cycle of abuse would begin again. *Id.* at ¶ 77.

Defendant Rives has been in a relationship with Adrian Tesreau, age 33, since he was seventeen years old. They share three children, ages 14, 8, and 2 months. Tesreau resides with the defendant and their children in St. Louis and is currently unemployed. She was previously employed with the Missouri Department of Motor Vehicles but had to quit towards the end of her last pregnancy. The defendant shares a great relationship with Ms. Tesreau and their children. *Id.* at ¶ 78.

Rives stands five feet, seven inches tall. *Id.* at ¶ 81. When he was born, he suffered from a double hernia. In an effort to repair the hernia, doctors used a mesh insert. When the defendant was about fifteen years old, he started having issues with the mesh insert and his kidneys. His bladder is unable to fully empty leading to regular bladder infections. At fifteen, his kidneys became completely blocked and required emergency surgery at St. Luke's Hospital in Des Peres, Missouri. He has since had four stents placed in his kidneys and still experiences flare ups every three to four months. *Id.* at ¶ 82.

The defendant first saw a mental health professional when he was seven years old. He was diagnosed with bipolar disorder at that time. He was also diagnosed with a learning disability, attention deficit disorder (ADD) and attention deficit hyperactivity disorder (ADHD)

6

around the same time in his childhood. He was prescribed Ritalin and Adderall throughout his childhood. *Id.* at ¶ 84.

Defendant Rives previously struggled with a gambling addiction in 2019 and 2020. He would go to a casino multiple times each week and would spend "everything he had." He no longer gambles. *Id.* at ¶ 85.

The defendant first consumed alcohol at age nine and last drank in February 2024. He first tried marijuana at age nine and last smoked prior to his arrest. During his period of most frequent use, he used "a lot" of marijuana and smoked daily. He first tried cocaine at age sixteen and last used cocaine in 2023. During his period of most frequent use, he used $100 worth of cocaine on a daily basis. Rives first tried methamphetamine at age 25 and last used it in 2023. He would use meth on a sporadic basis. He first tried heroin at age 18 and last used heroin prior to his arrest. He used two "beans" of heroin on a daily basis and he would snort or use heroin intravenously. His heroin usage eventually turned into fentanyl usage. On one occasion he overdosed on fentanyl and had to be revived using Narcan. He also used ecstasy and psylocibin mushrooms socially. Defendant Rives was originally prescribed Percocet for his kidney pain around fifteen years old but his usage increased and he was purchasing the drug on the street to keep up with his daily usage. He believes the prescription drug usage led to his heroin usage. *Id.* at ¶ 87.

Defendant Gino Rives completed fourth grade in Rockford, Illinois in the late 1990s. He left school because of his learning disability and behavioral issues. *Id.* at ¶ 89. He was homeschooled by his mother and older cousin for 4 or 5 more years and he is able to read and write. *Id.* at ¶ 90. He has expressed an interest in auto mechanics, welding, plumbing, and

7

HVAC. *Id.* at ¶ 91. The Defendant has never been employed in an "official" capacity and has never received a regular paycheck from any odd jobs he completed. *Id.* at ¶ 94.

### V. The Nature of the Offense

Defendant Rives pled guilty to Access Device Fraud, Fraudulently Effecting Transactions and Theft of Government Funds. *Id.* at ¶ 1. He engaged in ongoing fraudulent behavior targeting and financially exploiting at least two individuals who were over sixty years of age. *Id.* at ¶ 16. He also conspired to obtain money from the Social Security Administration. *Id.* at ¶ 31. The aggregate losses under the two cases totaled $1,439,557.93. *Id.* at ¶ 51.

### VI. Rives' Troubled Childhood and Lifelong Medical Challenges Should Be Considered in Reaching a Minimally Sufficient Sentence.

The Sentencing Guidelines specifically authorize a court to consider "the history and characteristics of the defendant" when determining whether a sentence is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). 18 U.S.C. § 3553(a)(1). This includes consideration of a defendant's education and vocational skills, mental and emotional conditions, and physical condition, including drug or alcohol dependence or abuse. U.S.S.G. §§ 5H1.2-4; *see United States v. Almenas*, 553 F.3d 27, 37 (1st Cir. 2009) (affirming sentence where district court considered defendant's history and circumstances, including his physical and mental condition); *see also United States v. Feemster*, 435 F.3d 881, 884 (8th Cir.2006) (agreeing that the history and characteristics of the defendant are appropriate considerations in sentencing outside the guidelines).

Here, Defendant Rives' history and characteristics, including a difficult childhood, lack of educational attainment, support of his family, and three dependent children, support a sentence below the guidelines. Defendant Rives experienced a difficult, troubled childhood. His father had ongoing alcohol and substance abuse issues as well as a gambling addiction. He was raised by

8

both parents, although he spent several years with his paternal grandparents when his father's addictions were especially bad. The utilities were regularly cut off in his home while growing up and he was physically abused by his father. His father would often call him stupid because of his learning disability, beat him and his siblings and lock them in closets. He witnessed domestic violence regularly between his mother and father. He once saw his father knock his mother's teeth out. See PSR at ¶ 77. His mother, Zella Rives, is a co-defendant on the case where Defendant Rives pled guilty to Theft of Government Funds. His mother was his more stable parent during his childhood. *Id.*

Rives has a lack of educational attainment. Defendant Rives only attended traditional school until fourth grade, and left school due to his learning disability. *Id*. at ¶ 89. He continued his education at home for another 4-5 years with his mother and older cousin. He is able to read and write. *Id*. at ¶ 90.

Despite his troubled childhood, Defendant Rives has strong ties to his family. He is in a committed relationship with his girlfriend, Adrian Tesreau, and maintains a close relationship with each of his children from this relationship. *Id.* at ¶ 78. He also has a good relationship with his mother and each of his three siblings. *Id.* at ¶ 77.

Sentencing courts have considered factors such as strong family support and community ties in varying downward. *See United States v. Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) (downward variance to five years of probation for racketeering, in part, because defendant came from a close-knit family and community and was, therefore, a good candidate for rehabilitation); *United States v. Wachowiak*, 412 F. Supp. 2d 958, 964 (E.D. Wis. 2006), *aff'd,* 496 F.3d 744 (7th Cir. 2007) (imposing a sentence below the guidelines, in part, because of the strong family support defendant enjoyed, which would aid in his rehabilitation and re-integration into the

9

community); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1110 (N.D. Iowa 2009) (considering the show of support from defendant's family, suggesting he will have support in his efforts at rehabilitation, in granting a motion for downward variance).

### VII. Rives' Need to Care for Small Children, Including an Infant, Indicates That a Sentence Substantially Below the Guidelines Range is Warranted

The Sentencing Guidelines allow extraordinary family circumstances to be taken into account in determining whether a downward departure is appropriate and reasonable in a particular case, even though family circumstances are "not ordinarily relevant." U.S.S.G. § 5H1.6. In fashioning a "sentence sufficient, but not greater than necessary," to meet the purposes of sentencing, 18 U.S.C. § 3553(a), "district courts are not only permitted, but required, to consider 'the history and characteristics of the defendant.'" *United States v. White*, 506 F.3d 635, 643 (8th Cir.2007) (quoting 18 U.S.C. § 3553(a)(1)).

Courts have long considered a defendant's responsibilities for caring for family members, as well as a defendant's current pregnancy or an infant child's needs, in sentencing under the Guidelines. *See Pena*, 930 F.2d at 1495 (finding downward departure to sentence of probation with special condition that defendant serve six months in a community treatment center reasonable where defendant was primary caregiver and sole financial support for her two-month-old infant and also supported her 16 year-old daughter, who herself had a two-month-old infant); *United States v. Pokuaa*, 782 F. Supp. 747, 747-48 (E.D.N.Y. Jan. 31, 1992) (finding downward departure and a sentence of time served justified where defendant was seven months pregnant at the time of sentencing). Courts have likewise recognized the defendant's status as a primary care giver as a potential mitigating factor warranting departure or downward variance from the sentencing guidelines. *See, e.g.*, *United States v. Lehmann*, 513 F.3d 805 (8th Cir. 2008) (affirming a downward variance to probation where a prison sentence would have negatively

affected the defendant's disabled nine-year-old son because, despite father's involvement in son's life, defendant was in a better position to provide the child care and support); *United States v. Haidley*, 400 F.3d 642, 645 (8th Cir. 2005) (family circumstances, including two young children at home, may be considered under § 3553(a)); *U.S. v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000) (district court had discretion to depart downward 4 levels for extraordinary family circumstance that defendant's 8-year-old son had lost his father and would be losing his mother, his primary care giver, for a substantial amount of time); *U.S. v. Crocker*, 2007 WL 2757130 (D. Kan. Sept. 30, 2007) (downward variance granted based on advisory Guidelines and several factors, including defendant's responsibilities as a parent).

In this case, Defendant Rives is responsible, along with the mother of his children with whom he has long cohabitated, Adrian Tesreau, for the primary care and support of three school-aged children, including a young infant. Rives' incarceration in a federal facility will leave him absent and unavailable to assist Ms. Tesreau during key periods of the lives of their children, including pivotal times in his youngest child's life. The detriment to the infant that would potentially result from separation from a parent during a period of incarceration can be taken into account by the court as a factor in sentencing. *See United States v. Greer*, 375 F. Supp. 2d 790, 794-95 (E.D. Wis. June 27, 2005) (considering effect of defendant's possible incarceration on her young children and her unborn child in determining that a sentence of no incarceration was appropriate, even though the guidelines suggested a sentence of 46-48 months); *see also Pena*, 930 F.2d at 1495 (finding that the district judge properly exercised discretion in granting a downward departure to a sentence of five years of probation with six months community treatment based on consideration of factors, including the detrimental effect defendant's incarceration would have on her children and grandchild).

11

Rives' responsibilities as father of three young children, including an infant, suggest that a sentencing variance is appropriate in this case. A punishment that minimizes Rives' necessary sentence of incarceration and allows him to maintain close contact with his infant and wife will best effectuate the statutory purposes of sentencing of just punishment and providing Defendant with correctional treatment in the most effective manner.

### VIII. Sentencing Commission Data Reflects That Defendant Poses a Reduced Risk of Recidivism

United States Sentencing Commission data support the conclusion that Defendant Rives poses a reduced risk of recidivism, as compared with other offenders, and suggest that a sentence variance that minimizes any sentence of incarceration is appropriate in this case. *See e.g.,* U.S. Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 16 (May 2004), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (hereinafter "Measuring Recidivism"). The criminal history measure of the guidelines estimates the likelihood of recidivism based on two offender characteristics: prior convictions and prior terms of incarceration. *See* U.S.S.G. §4A1.1 The United States Sentencing Commission's 15-year report, however, concludes that the measure's predictive power would improve if it incorporated additional offender characteristics. *See Measuring Recidivism* at 16.

Recidivism rates decline consistently as the defendant's age increases. *Id.* at 12, 28. Offenders between 21 and 25 years old recidivate at a rate of 31.9%. *Id.* at 28. In comparison, offenders with a criminal history category I between the ages of 36 and 40 recidivate at the rate of 12.1%. *Id.* Defendant Rives is currently 36 years old. PSR Identifying Data.

12

Marital status also corresponds to a reduced risk of recidivism. Criminal history category I defendants who were never married recidivate at a rate of 22.7%, while those who were co-habitating, widowed and/or separated recidivate at a rate of 12.9%. *Id.* at 29. Defendant Rives is presently co-habitating with Adrian Tesreau and their three children. The defendant and Ms. Tesreau have been in a relationship since he was seventeen years old, almost twenty years. PSR ¶ 78.

These factors indicate that the Defendant poses a low risk of recidivism and, as such, is a good candidate to receive a sentence that minimizes any term of incarceration, because such a sentence would not be necessary to achieve the purpose of sentencing of specific deterrence.

**IX.   Conclusion**

For the foregoing reasons, Defendant Rives respectfully suggests that a sentence of 36 months imprisonment will best serve the statutory purposes of sentencing here.

Respectfully submitted,

ROSENBLUM, SCHWARTZ, FRY, & JOHNSON, P.C.

By:   */s/ Gregory N. Wittner*
GREGORY N. WITTNER # 43278
120 South Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332/Facsimile 862-8050
gwittner@rsflawfirm.com
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been delivered via the Court's electronic filing system, this 20th day of June, 2024, to counsel for all parties of record.

*/s/ Gregory N. Wittner*